IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUZI ZHOU, BRIAN CHUNHIN LEUNG, SHAOXIA LI, ZIHUI ZHANG, and Fanli, Inc.<br><br>Plaintiffs,<br><br>v.<br><br>TIANYUAN GU,<br><br>Defendant. | CIVIL ACTION<br>NO. 25-02989 |

**OPINION**

**Slomsky J.** **August 10, 2026**

## I. INTRODUCTION[1]

$320,191.27 loaned, and no return on their money to date. This is the allegation of Plaintiffs Muzi Zhou, Brian Chunhin Leung, Shaoxia Li, Zihui Zhang, and Fanli, Inc. (collectively, "Plaintiffs" and individually, a "Plaintiff"), who aver they loaned over time Defendant Tianyuan Gu $320,191.27 based on Defendant's representations that the funds would be used to purchase real estate in the Commonwealth of Pennsylvania. (Doc. No. 17 ¶¶ 1, 46.) Plaintiffs also allege Defendant represented to them on various occasions that they would be repaid. (Id. ¶ 4.) In reliance on these promises, Plaintiffs loaned Defendant the funds, but now suffer losses due to Defendant's failure to repay. (Id. ¶ 6.) As a result, Plaintiffs sued Defendant, alleging several state common law causes of actions.

In the First Amended Complaint ("FAC"), Plaintiffs bring the following claims against Defendant: (1) breach of contract (Count I); (2) fraud and fraudulent misrepresentations (Count II); (3) conversion (Count III); and (4) unjust enrichment pled as an alternative to the breach of

---

1 The facts in this Opinion are sourced from the First Amended Complaint ("FAC") (Doc. No. 17) and are taken as true in this stage of litigation.

contract claim (Count IV). Plaintiffs also seek (5) an accounting (Count V); and (6) an imposition of a constructive trust (Count VI). Defendant moves to dismiss the FAC for failure to state a claim under Federal Civil Rules of Procedure 12(b)(6).[2]

For the reasons stated below, Defendant's Motion to Dismiss will be granted in part and denied in part.

## II. BACKGROUND

### A. Parties

Plaintiffs are a group of lenders residing in California.[3] (Doc. No. 17 ¶¶ 9–14.) Defendant resides in Philadelphia, Pennsylvania.[4]

### B. Factual Background

The FAC consists of several dated transactions where money was advanced by Plaintiffs to Defendant. The transactions occurred between 2019 and 2023 and were alleged to have been for "the express purpose of purchasing and investing in real property in Pennsylvania." (Id. ¶ 16.) The following transactions, organized by year, are alleged in the FAC:

---

2 Defendant originally moved to dismiss on additional grounds of lack of personal jurisdiction under Federal Rules of Civil Procedure 12(b)(2) and insufficient service of process under Rules 12(b)(4) and 12(b)(5). (See Doc. No. 19 at 1.) However, Defendant abandoned both defenses during a telephone conference with the Court on June 1, 2026. (See Doc. No. 42.)

3 Plaintiffs Muzi Zhou, Brian Chunhin Leung, Shaoxia Li, Zihui Zhang are adult individuals residing in California. (Doc. No. 17 ¶¶ 9–13.) Plaintiff Fanli Inc. is a California corporation. (Id. ¶ 14.)

4 Defendant is member of Skywide Real Estate LLC ("the LLC"), a non-party to this action. (Doc. No. 19 at 10.)

- 2019: In August 2019, Plaintiffs loaned Defendant $16,250 with a maturing date for the loan of October 1, 2019. (Id. ¶ 17.) In October 2019, Plaintiffs loaned Defendant $17,062.50 with a maturing date of approximately April 3, 2019. (Id.)
- 2020: In July 2020, Plaintiffs loaned Defendant $25,000 to purchase the "Folsom Project." (Id. ¶ 18.) In August 2020, Plaintiffs loaned Defendant another $25,000 to purchase the "Mr. Crowd Folsom Equity Project." (Id.) In November 2020, Plaintiffs loaned Defendant $2,500 with a maturing date of December 1, 2020. (Id. ¶ 19.) Again, in November, Plaintiffs loaned Defendant $20,000 with a maturing date of December 16, 2021, with a promised return of $22,400 and to purchase the "1603 Philips Project." (Id. ¶ 20.)
- 2021: In January 2021, Plaintiffs loaned Defendant $9,327.08 to purchase the "1852 McClellan Project." (Id. ¶ 21.) That same month, Plaintiffs loaned Defendant another $30,500 with a maturing date of January 1, 2022, also to purchase the "1852 McClellan Project." (Id. ¶ 22.) And again, in January, Plaintiffs loaned Defendant funds several times in the amounts of $1,500, $9,327.08, $11,926.02, $19,426.02, $7,181, and $9,327.08 to purchase both the "Mr. Crowd Folsom Equity Project" and the "1852 McClellan Project." (Id. ¶¶ 23–28.) Later that year, Plaintiffs provided Defendant with several payments ranging from $19,092.02 to $42,126 relating to multiple properties referred to as (1) the "Dorrance/Mercy Project."; (2) the "1616 Ringgold Project"; (3) the "5134 Folsom Project"; (4) "Mr. Crowd Folsom Equity Project"; and (5) "124 Mercy Street Project." (Id. ¶¶ 29–38.)

- Finally, on several occasions between September 2021 and March 2023, Plaintiffs loaned Defendant funds for unspecified real estate projects in the amounts of $70,000, $11,500, $25,088, $21,383.06, $36,984, and $12,120.54. (Id. ¶¶ 39–44.)

All the above loans were executed with due-on-repayment interest ranging from 10% to 15%. (Id. ¶ 45.) Additionally, on August 19, 2023, Plaintiffs entered into a Loan Repayment and Liability Transfer Agreement (the "Agreement") with Defendant in the total amount of $320,191.27 at a monthly compound interest rate of 1%. (Id. ¶ 46.) In sum, Plaintiffs' loans to Defendant are as follows: $109,191.62 from Plaintiff Brian Chunhin Leung, $30,000 from Plaintiff Shaoxia Li, $34,999.65 from Plaintiff Zihui Zhang, and $10,000 from Plaintiff Fanli Inc. and an additional $136,000 from a collective of Plaintiffs. (Id. ¶ 47.)

### C. Procedural History

On June 11, 2025, Plaintiffs commenced this action by filing a Complaint against Defendant.[5] (Doc. No. 1.) Defendant then filed a Motion to Dismiss on December 5, 2025. (Doc. No. 11.) On December 22, 2025, the Court granted Plaintiffs leave to file an Amended Complaint. (Doc. No. 22.) Plaintiffs filed their First Amended Complaint ("FAC") on January 5, 2026.[6] (Doc. No. 17.) On January 19, 2026, Defendant responded with a Motion to Dismiss based on three grounds: (1) lack of personal jurisdiction under the Federal Rules of Civil Procedure 12(b)(2); (2)

---

[5] Plaintiffs attached two Exhibits (Ex. A, Ex. B) to the original Complaint. (Doc. No. 1.) Exhibit A is a "Loan Repayment Agreement" which is signed by Plaintiff Chunhin Leung who signed on behalf of all Plaintiffs, and Defendant, who signed as a "Member" of Skywide Real Estate LLC ("the LLC"). Exhibit B is "Loan Repayment and Liability Transfer Agreement" that is alleged to be between Plaintiffs and Defendant. However, it is unsigned by any party.

[6] The First Amended Complaint ("FAC") has attached only Exhibit B, the "Loan Repayment and Liability Transfer Agreement", not Exhibit A.

improper and insufficient service of process under Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5); and (3) failure to state a claim for which relief can be granted under the Federal Rules of Civil Procedure 12(b)(6).[7] (Doc. No. 19.)

On February 4, 2026, Plaintiffs filed a Memorandum of Law in Opposition to Defendant's Motion to Dismiss. (Doc. No. 24.) Finally, on February 10, 2026, Defendant filed a Reply to Plaintiff's Opposition Brief.[8] (Doc. No. 25.) Defendant's Motion to Dismiss (Doc. No. 19) is now ripe for a decision.

## III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads

---

[7] As noted supra, Defendant dropped the personal jurisdiction (Rule 12(b)(2)) and improper/insufficient service (Rules 12(b)(4)–(5)) defenses during the June 1, 2026 status telephone conference. (See Doc. No. 42.) As a result, the Court will only address the Rule 12(b)(6) dispute.

[8] On April 6, 2025, a hearing was held before this Court on Defendant's Motion to Dismiss. At the hearing, this Court ordered Plaintiffs' counsel to take various depositions regarding the insufficient and improper service of process claim. As mentioned above, this issue was later waived by Defendant.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234–35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Courts may also "consider documents integral to or explicitly relied upon in the complaint or any undisputedly authentic documents that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." In re Asbestos Prods. Liab. Litig., 822 F.3d 125, 133 n.7 (3d Cir. 2016).

## IV. ANALYSIS

### A. Breach of Contract (Count I)

Plaintiffs first assert a breach of contract claim, alleging that they entered into a valid and enforceable loan agreement[9] with Defendant, who did not uphold his end of the bargain. (Doc. No. 17 ¶¶ 54–55.) Under that agreement, Plaintiffs submit that Defendant was obligated to repay Plaintiffs the principal amounts loaned, together with agreed-upon interest. (Id. ¶ 55.) Because of Defendant's failure to repay, Plaintiffs claim Defendant breached their contract, causing them to suffer over $320,292.37 in damages. (Id. ¶ 58.) Defendant counters that he did not enter into any enforceable contract in his individual capacity. (Doc. No. 19 at 17.) Furthermore, Defendant states that although Plaintiffs routinely mention the "Loan Repayment and Liability Transfer Agreement," they do not plead its material terms and fail to allege Defendant executed the agreement personally, rather than as an agent of a corporate entity. (Id.)

Under Pennsylvania law, an enforceable contract exists when "both parties have manifested an intention to be bound by its terms [,] . . . the terms are sufficiently definite to be specifically enforced," and "there is consideration on both sides." Channel Homes Ctrs. V. Grossman, 795 F.2d 291, 298–99 (3d Cir. 1986). Furthermore, enforceability requires "the nature and extent of the mutual obligations [to] be certain, and the parties must have agreed on the material and necessary details of their bargain." Lackner v. Glosser, 892 A.2d 21, 30 (Pa. Super.

[9] The Loan Repayment and Liability Transfer Agreement ("Loan Repayment Agreement") is attached to original Complaint and the FAC as Exhibit B.

Ct. 2006). "[M]erely engaging in negotiations, drafting preliminary documents, or agreeing 'to enter into a binding contract in the future,'" however, "does not create an enforceable contract 'because the parties themselves have not come to an agreement on the essential terms of the bargain and therefore there is nothing for the court to enforce.'" Shell's Disposal & Recycling, Inc. v. City of Lancaster, 504 F. App'x 194, 201 (3d Cir. 2012) (quoting Am. Eagle Outfitters v. Lyle & Scott Ltd., 585 F.3d 575, 582 (3d Cir. 2009)).

At the Motion to Dismiss stage, the Court must determine whether Plaintiffs have plausibly alleged the existence of an enforceable contract between the parties by accepting the factual allegations in the FAC as true and construing them in the light most favorable to Plaintiffs. See Fed. R. Civ. P. 12(b)(6). Here, Defendant contends that even under this standard of review the Loan Repayment and Liability Transfer Agreement does not constitute a valid, enforceable contract and therefore, no contractual relationship exists between the parties. However, Plaintiffs do not premise their breach of contract claim solely on that Agreement. Rather, they submit the Parties' contractual relationship extends beyond this document:

> 54. Plaintiffs and Defendant entered into valid and enforceable loan agreements and related repayment agreements, including but not limited to the Repayment Agreement dated August 19, 2023, attached to the initial complaint as exhibit B.

(Doc. No. 17 ¶ 54.) Moreover, Plaintiffs allege they loaned money with the mutual understanding that Defendant would repay them. Accepting these allegations as true at this stage of the litigation, it is evident that the Parties' conduct in loaning and receiving money signals the existence of a contractual relationship between them—even in the absence of an executed written agreement. See Ruggiero v. Nocenti, 556 F. Supp. 3d 512, 522 (E.D. Pa. 2021) (quoting 13 Pa. C.S. § 2204(a)) (A contract "may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."). Accordingly, Plaintiffs have plausibly

alleged a contractual relationship existed between the parties independent of, and not limited to, the Loan Repayment and Liability Transfer Agreement.

Defendant's emphasis on the absence of signatures from the Loan Repayment and Liability Transfer Agreement does not overcome the existence of a contract at this stage of the case. Under Pennsylvania law, a signature is not a prerequisite to contract formation unless required by statute or by the parties' intent. See Firetree, Ltd. v. Dep't of Gen. Servs., 920 A.2d 906, 911 (Pa. Commw. Ct. 2007) ("As a general rule, signatures are not required unless such signing is expressly required by law or by the intent of the parties."). Thus, the lack of signatures, standing alone, does not preclude the existence of an enforceable contract. Accordingly, the breach of contract claim in Count I will not be dismissed.

**B. Fraud/Fraudulent Misrepresentations (Count II)**

Second, Plaintiffs advance a fraud/fraudulent misrepresentation claim against Defendant. (Doc. No. 17 ¶¶ 59–62.) In this claim, they contend Defendant knowingly and purposefully mispresented that Plaintiffs' funds would be used solely for specified real estate projects, and that repayment of such funds was guaranteed. (Id. ¶ 60.) Additionally, they submit that Defendant intended for Plaintiffs to rely on these misrepresentations, Plaintiffs did in fact reasonably rely on them, and suffered damages as a result. (Id. ¶¶ 61–62.) Defendant challenges Plaintiffs fraud claim as being unspecific, insisting it must be dismissed for failure to meet the heightened pleading standard requiring specificity under Pennsylvania law and Federal Rule of Civil Procedure 9(b). (Doc. No. 19 at 18.)

Under Pennsylvania law, the intentional tort of fraud or fraudulent misrepresentations is comprised on six elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4)

with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was caused by the reliance." Griggs v. Ernst, 538 Pa. 193, 207 (1994).

Rule 9(b) of the Federal Rules of Civil Procedures requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The purpose of this pleading standard is to place defendants on notice of the specific misconduct with which they are charged and provide them ample time to formulate a potential defense. Alfaro v. E.F. Hutton & Co. Inc., 606 F.Supp. 1100, 1108–09 (E.D. Pa. 1985); In re Catanella and E.F. Hutton & Co. Inc., 583 F.Supp. 1388, 1397 (E.D. Pa. 1984). The standard is not to be applied so strictly as to deprive a legitimate plaintiff of their opportunity to develop their case through discovery. Alfaro, 606 F.Supp. at 1109. The Third Circuit has held, "the requirements of [R]ule 9(b) may be satisfied if the complaint describes the circumstances of the alleged fraud with 'precise allegations of date, time, or place' or by using some means of 'injecting precision and some measure of substantiation into their allegations of fraud.'" Bd. of Trs. Of Teamsters Loc. 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 172 n.10 (3d Cir. 2002) (internal citations omitted).

In the FAC, though Plaintiffs provide a list of transactions between them and Defendant—including dates and monetary amount—Plaintiffs provide no evidence of specific statements or representations Defendant made to them regarding these loan payments. Instead, Plaintiffs make conclusory statements about Defendant's actions such as:

> 60. Defendant knowingly and purposefully misrepresented that Plaintiffs' funds would be used solely for the specified real estate projects and that repayment of Plaintiff's funds was guaranteed

> 61. Defendant intended Plaintiffs to rely on Defendant's misrepresentations about the use of Plaintiff's funds.

(Doc. No. 17 ¶¶ 60–61.) These conclusory statements, however, without any averment describing the "date, time, and place" of the alleged fraud, do not meet the heightened standard as required under both Pennsylvania law and the Federal Rule of Civil Procedure 9(b). See Travelers Indem. Co. v. Cephalon, Inc., 620 Fed. App'x. 82, 86 (3d Cir. 2015) (finding Plaintiffs failure to "identify any specific fraudulent statements, omissions, or misrepresentations that were made" and "specify when, where, or to whom any sales pitch was made" results in a dismissal of fraud claims). Moreover, while Defendant himself—as sole counterpart to the transactions—is identified, the FAC does not attribute any individual transaction tied to any specific Plaintiff. Instead, it alleges only the aggregate amounts each Plaintiff purportedly loaned. For the above reasons, Plaintiffs fail to allege with specificity the substance of the fraudulent misrepresentations. Thus, the Court must dismiss Count II for lack of specificity.[10]

**C. Conversion (Count III)**

Third, Plaintiffs assert a conversion claim against Defendant for wrongfully exercising dominion and control over their funds. (Doc. No. 17 ¶ 64.) Plaintiffs claim they "transferred specific, identifiable sums of funds to Defendant for limited and expressly agreed purposes, namely the acquisition and investment in designated real estate projects in the Commonwealth of Pennsylvania." (Id. ¶ 65.) In the FAC, they contend that Defendant, with the funds in his possession, controlled, used, and retained Plaintiffs' identifiable funds without authorization and this constitutes conversion under Pennsylvania law. (Id. ¶ 67.) Defendant squarely counters

[10] Defendant also argues the fraud claim is barred by the gist of the action doctrine and the economic loss doctrine. But because Plaintiffs fail to meet the specificity requirement of Rule 9(b), there is no need to address either doctrine.

submitting that failure to pay a debt does not constitute conversion under Pennsylvania law and therefore asks this Court to dismiss Count III. (Doc. No. 19 at 19.)

Under Pennsylvania law, a plaintiff asserting a claim of conversion must allege (1) the deprivation of a right in, or use or possession of, property; (2) with or without the owner's consent, and (3) without lawful justification. Marshall v. Fenstermacher, 388 F. Supp. 2d 536, 555 (E.D. Pa. 2005). When the property at issue is money, however, additional limitations apply:

> Money may be the subject of a conversion only where the plaintiff had a property interest in the money at the time of the alleged conversion. Thus, the mere failure to pay a debt is not conversion.

Kia v. Imaging Sciences Intern., Inc., 735 F. Supp. 2d 256, 270 (E.D. Pa. 2010) (emphasis added). Consistent with this principle, "an action for conversion will not lie where the alleged converter borrowed money even though he had an intent to not pay back the loan." NovaCare, Inc. v. S. Health Mgmt. Inc., No. 97-cv-5903, 1998 WL 470142, at *2 (E.D. Pa. Aug. 11, 1998).

Here, Plaintiffs allege that Defendant wrongfully retained funds they loaned for various purported real estate projects. These allegations do not establish that Plaintiffs retained a property interest in specific, identifiable funds after the money was transferred to Defendant. Rather, the FAC alleges only that Defendant failed to repay money owed under the parties' alleged agreement. In fact, Plaintiffs concede that they lack sufficient information to determine whether Defendant even used their funds to acquire any specific property, claiming that the alleged transactions are too "complex" to identify the properties at issue. (See Doc. No. 17 ¶¶ 77–78.) Because Plaintiffs do not allege that Defendant converted specific, identifiable funds in which they retained a property interest—but instead seek recovery for Defendant's alleged failure to repay a debt—they fail to state a plausible conversion claim. As such, because the failure to pay back a debt does not

constitute conversion and that is what is alleged here in the FAC, the Court will dismiss Count III.[11]

**D. Unjust Enrichment as an Alternative to the Breach of Contract Claim (Count IV)**

Plaintiffs fourth claim is for unjust enrichment and is pled in the alternative to the breach of contract claim in Count I. (Doc. No. 17 ¶¶ 69–74.) On the unjust enrichment claim, Plaintiffs contend Defendant received a substantial monetary benefit from Plaintiffs funds. (Id. ¶ 70.) According to Plaintiffs, Defendant has failed to repay any portion of the funds, despite his acknowledgment of the obligation to repay. (Id. ¶¶ 71–72.) Defendant argues the doctrine of unjust enrichment is inapplicable because Plaintiffs claims are contractual in nature, rendering unjust enrichment unavailable. (Doc. No. 19 at 20.)

In order to prevail on an unjust enrichment claim under Pennsylvania law, a plaintiff must allege "(1) benefits conferred on one party by another; (2) appreciation of such benefits by the recipient, and; (3) acceptance and retention of these benefits under such circumstances that it would be inequitable [or unjust] for the recipient to retain the benefits without payment of value." Premier Payments Online, Inc. v. Payment Sys. Worldwide, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2011) (quoting 16 Summary of Pa. Jur.2d Commercial Law § 2.2 (1994)). Unjust enrichment is a "quasi-contractual doctrine" that does not apply in cases where the parties have a written or express contract. Id. (citing Ben. Trust Life Ins. Co. v. Union Nat'l Bank, 776 F.2d 1174, 1177 (3d Cir. 1985)).

The parties' disagreement is not on whether the elements of unjust enrichment are met when viewing the allegations in the FAC in the light most favorable to Plaintiffs: (1) the contested

---

[11] Defendant also argues the conversion claim is barred by the gist of the action doctrine and the economic loss doctrine. But because the claim is being dismissed another ground, the Court need not consider Defendant's additional arguments.

funds in this case constitute a benefit conferred on Defendant by Plaintiffs; (2) Defendant received the benefit; and (3) Defendant retained the benefit or the funds without any repayment to Plaintiffs. Despite meeting the elements of unjust enrichment, Defendant contends that Plaintiffs' claim is still barred by the fact that the parties' relationship is "founded upon a written agreement or express contract."[12]

Although the existence of an enforceable written contract ordinarily precludes recovery under a theory of unjust enrichment, "courts have permitted plaintiffs to pursue alternative theories of recovery based both on breach of contract and unjust enrichment." See Cornell Cos. v. Borough of New Morgan, 512 F. Supp. 2d 238, 265 (E.D. Pa. 2007). Therefore, though the alleged repayment obligation arises from the parties' purported contractual relationship, Plaintiffs have exercised their right to allege alternative forms of relief "regardless of consistency." Id. (quoting Fed. R. Civ. P. 8(e)(2)). Thus, at this stage, neither the parties' purported contractual relationship nor the nature of the alleged contract precludes Plaintiffs from pursuing unjust enrichment. Accordingly, Plaintiffs' unjust enrichment claim in Count IV will not be dismissed.

**E. Accounting (Count V)**

Fifth, Plaintiffs seek an accounting "of all funds received, held, used, transferred, invested, or retained by Defendant in connection with Plaintiffs' loans and the real estate properties acquired therewith." (Doc. No. 17 ¶ 80.) Plaintiffs assert Defendant had exclusive possession, custody, and control over the contested funds, and the transactions and reflecting documents associated with the funds. (Id. ¶ 76.) Plaintiffs concede they lack sufficient information on Defendant's use of the funds, whether the specific properties were acquired using the funds, or whether the funds were commingled, diverted, or transferred to third parties. (Id. ¶¶ 77–78.) Because of the complexity

---

[12] See Doc. No. 19 at 19–20.

of the transactions, Plaintiffs allege that the equitable remedy of accounting "is necessary to determine the full extent of Defendant's receipt, use, retention, and disposition of Plaintiff's funds and all benefits derived therefrom." (Id. ¶¶ 78–79.) Defendant disputes whether an accounting is proper in the present action, asserting the equitable remedy is only required when there is no adequate remedy at law and there is a fiduciary relationship between the parties, alleged fraud or misrepresentation, or mutual and complicated accounts. (Doc. No. 19 at 20–21.) Here, Defendant argues that Plaintiffs seek nothing more than repayment of alleged loans and does not allege a fiduciary relationship with Defendant or the presence of mutual and complicated accounts that warrant equitable intervention. (Id. at 21.)

Generally, the equitable remedy of accounting arises from a defendant's possession of money or property they are obligated to return because of a particular relationship with the plaintiff. Am. Air Filter Co., Inc. v. McNichol, 527 F.2d 1297, 1300 (3d Cir. 1975). Like all other equitable remedies, an equitable accounting may only be permitted where no adequate legal remedies exist. Benefit Control Methods v. Health Care Services, Inc., No. 97-cv-4418, 1998 WL 22080, at *2 (E.D. Pa. Jan. 16, 1998). The Supreme Court of Pennsylvania has described instances where legal remedies are inadequate, and therefore equitable accounting is proper:

> (1) Where there are mutual accounts between the plaintiff and the defendant; that is, where each of the two parties has received and paid on account of the other. (2) Where the accounts are all on one side, but there are circumstances of great complication or difficulties in the way of adequate relief at law. (3) Where a fiduciary relationship exists between the parties, and a duty rests upon the defendant to render an account.

Williams v. Finlaw, Mueller & Co., 292 Pa. 244, 247 (1928). The Court further stated "[n]o satisfactory test can be laid down to determine when an account is sufficiently complicated to enable equity to take hold." Id. at 248. In this regard, Pennsylvania courts have held the remedy is "improper where no fiduciary relationship exists between the parties, no fraud or

misrepresentation is alleged, the accounts are not mutual or complicated, or the plaintiff possesses an adequate remedy at law." Rock v. Pyle, 720 A.2d 137, 142 (Pa. Super. 1998); Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1124 (Pa. Super. 1987); Ebbert v. Plymouth Oil Co., 348 Pa. 129, 134 (1943).

In this case, Defendant argues that Plaintiffs' accounting claim fails because the FAC does not allege either a fiduciary relationship between the parties or the existence of mutual or sufficiently complex accounts warranting equitable relief. (Doc. No. 19 at 21.) Plaintiffs respond that the transactions at issue are complex and they lack sufficient information to state how Defendant used the funds and to what extent. (Doc. No. 17 ¶¶ 77–78.) But when looking at the allegations in the FAC in the light most favorable to Plaintiffs, Defendant's argument is persuasive for several reasons.

First, although Plaintiffs characterize the underlying financial transactions as complex, the accounts at issue are clearly not mutual but instead reflect a one-sided relationship. In fact, the allegations in the FAC show a unilateral course of dealing in which Plaintiffs repeatedly loaned money to Defendant for years without repayment. In fact, Plaintiffs do not even allege the accounts are mutual. Second, while the accounts at issue are indeed one-sided, Plaintiffs have failed to allege circumstances that will pose great difficulty in attaining adequate relief at law. Third, Plaintiffs have failed to allege facts establishing a fiduciary relationship between the parties, rather they have alleged a relationship that appears to be purely transactional. Finally, Plaintiffs have failed to sufficiently plead fraud and misrepresentation to preclude the possibility of the remedy. As such, Plaintiffs' demand for an equitable accounting remedy in Count V will be dismissed.

**F. Constructive Trust (Count VI)**

Finally, Plaintiffs seek this Court to impose a constructive trust and equitable lien over certain property and proceeds. (Doc. No. 17 ¶ 86.) Plaintiffs submit Defendant used Plaintiffs'

funds under circumstances involving breach of contract, abuse of confidence, fraud, and unjust enrichment. (Id. ¶ 82.) They assert the Parties were in a relationship of trust and confidence when Plaintiff reasonably relied on Defendant's misrepresentations for this and, the other reasons noted supra, Defendant's retention of the real properties and related proceeds acquired from Plaintiffs would be inequitable. (Id. ¶¶ 83–84.) Defendant challenges the request for a constructive trust, on the ground that the remedy requires an identification of specific property held by Defendant under circumstances making retention inequitable, and no such identifiable or traceable property tied to Plaintiffs' funds held by Defendant has been described in the FAC. (Doc. No. 19 at 21.)

The imposition of a constructive trust is an equitable remedy intended to prevent unjust enrichment. Kimball v. Barr Township, 378 A.2d 366, 369 (Pa. Super. Ct. 1977). However, under Pennsylvania law, "a constructive trust . . . is not really a trust at all but rather an equitable remedy." Chaleplis v. Karloutsos, 579 F. Supp. 3d 685, 706 (E.D. Pa. 2022) (quoting Buchanan v. Brentwood Fed. Sav. and Loan Ass'n., 457 Pa. 135, 150 (1974)) (dismissing a plaintiff's constructive trust claim). Further, "a constructive trust is an equitable remedy and not a separate, specific cause of action." Id. (quoting Brock & Co., Inc. v. Kings Row Assocs., No. 04-cv-2096, 2004 WL 2624864, at *5 (E.D. Pa. Nov. 17, 2004)).

Although the imposition of a constructive trust is not recognized as an independent cause of action under Pennsylvania law, Plaintiffs here through their unjust enrichment claim seek "restitution, disgorgement, and all other equitable relief available under Pennsylvania law." (See Doc. No. 17 ¶ 74.) Therefore, a constructive trust as an equitable remedy may be imposed at a later stage in this litigation, if warranted. For this reason, the request for relief on Count VI will not be dismissed at the Motion to Dismiss stage of this case.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the First Amended Complaint will be granted in part and denied in part. Accordingly, the following will be dismissed:

- Count II: Fraud/Fraudulent Misrepresentations,
- Count III: Conversion, and
- Count V: Accounting

The following will not be dismissed:

- Count I: Breach of Contract, and
- Count IV: Unjust Enrichment (as an Alternative to the Breach of Contract claim)
- Count VI: Constructive Trust

An appropriate Order follows.